IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STELLA KOZYRA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-cv-8605 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| DOLLAR TREE STORES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Stella Kozyra was injured when she tripped and fell into a shopping cart in a retail store owned and operated by Defendant Dollar Tree Stores, Inc. This matter is currently before the Court on Defendant's motion for summary judgment [35].[1] For the reasons set forth below, Defendant's motion [35] is granted. In light of this decision, the Court strikes Plaintiff's motion calling attention of the court for a decision [43] as moot and strikes the notice of motion date of July 13, 2017. No appearances are necessary on that date.

**I.     Background[2]**

Defendant Dollar Tree Stores, Inc. operates a store at 3620 East 118th Street in Chicago, Illinois. The store's entrance contains two sets of manual doors. The first set of doors allows entry from the outside into an interior vestibule area. The vestibule is a rectangle that has two large windows looking into the store: a window that is parallel with the store front that looks

---

[1] The Court notes that Defendant filed an identical, duplicate motion for summary judgment [34]. The Court strikes that motion [34] as moot.

[2] The Court takes the relevant facts primarily from the parties Local Rule 56.1 statements of undisputed material facts: (1) Defendant's Statement of Undisputed Material Facts for Defendant's Motion for Summary Judgment [36]; (2) Plaintiff's Statement of Additional Facts [38]; (3) Plaintiff's Response to Defendant's Statement of Undisputed Material Facts [39]; (4) Defendant's Reply to Plaintiff's Response to Defendant's Statement of Undisputed Material Facts [40]; and (5) Defendant's Response to Plaintiff's Statement of Additional Facts [41]. The facts set forth are undisputed, unless otherwise noted.

directly into the store, and a window to the left that is perpendicular to the store front. A second set of doors allows entry from the vestibule into the store itself. Checkout counters are located near the front of the store, approximately ten feet from the entrance in a leftward direction. The store has a light colored floor.

The incident in question occurred on Friday April 10, 2015. The parties dispute the details regarding the arrangement of the front of the store on that date, and there is no surveillance footage or contemporaneous photographic evidence of the scene. Plaintiff maintains that shopping carts were located inside the store to the left of the entrance, and that they were lined up against the vestibule window parallel to the storefront. See [38] at ¶ 35, 39. Defendant states that the shopping carts instead were lined up along the perpendicular window, which is slightly farther to the left than Plaintiff's description.[3] See [41] at ¶ 35, 39. As for the shopping baskets, Defendant maintains that they were kept in stacks in the vestibule area. Plaintiff both agrees with and also disputes this fact within her own Local Rule 56.1 statement, claiming at times that the baskets were kept in the store. Compare [38] at ¶ 16 ("In the vestibule, there were approximately four stacks of the shopping baskets.") with ¶ 29 (the baskets "were stacked against the glass wall, not in the hallway, when Plaintiff fell. They were stacked near the window."). Acknowledging these disagreements, it is undisputed that (1) the carts were lined up near the front of the store and to the left of the entrance, and (2) the shopping baskets were stacked somewhere near the store entrance.

Turning to the incident itself, Plaintiff, then a 90-year-old woman, entered the Dollar Tree at 12:36 p.m. Plaintiff testified that she made a complete entrance into the store, with both

---

[3] The Court has been provided with one photograph of the area, which supports Defendant's description, see [37] at 15, although the record reflects that the picture was taken an unknown number of days after April 10, 2015. See [36-2] (M. Bly Dep.) at 18-19 (testifying that photos were taken after April 10); 72 (same).

sets of doors shut behind her. See [36-1] (S. Kozyra Dep.) at 24. Once in the store, Plaintiff turned left and walked about eight to ten steps towards the shopping carts when she tripped and fell into a shopping cart. See [38] at ¶ 36. It is undisputed that at the time of the incident there was no one near the store's entrance: no one was waiting in line at the checkout counter and no employees were at the cash registers or otherwise were in the area. The parties acknowledge that some customers were in the store at this time, but there is no indication as to how many. The record indicates that Fridays were generally "busy," and 12:30 p.m. is typically a "busy time." See [36-2] (M. Bly Dep.) at 53.

Plaintiff states that a shopping basket was left on the floor and caused her to trip and fall. Defendant has acknowledged this but has also put forth statements of fact asserting that Plaintiff tripped over a different item. However, recognizing that the facts are construed in favor of Plaintiff at this stage and for the sake of its summary judgment arguments, Defendant's motion accepts the basket as the cause of Plaintiff's fall. See [35] at 4 (accepting Plaintiff's version "so that there is no dispute with regard to the physical nature of the condition").[4]

Plaintiff screamed when she fell, and assistant store manager Marianne Bly, who was on break at the time and elsewhere in the store, came to offer assistance. When she arrived, Bly saw Plaintiff holding on to a shopping cart and trying to pull herself up. Bly provided Plaintiff a chair, prepared an accident report form, and called Defendant's insurer to notify it of the incident. More than once, Bly asked Plaintiff if she wanted an ambulance; Plaintiff declined. After about 15 to 30 minutes, Plaintiff got up and proceeded to shop in Defendant's store and drive home. Plaintiff claims to have sustained serious injuries from her fall. See [28] at ¶ 5, 7.

---

[4] As an additional point, Defendant's Rule 56.1 statement contains multiple paragraphs that draw from Plaintiff's deposition and state that Plaintiff tripped over a basket without any qualification. See, *e.g.*, [36] at ¶¶ 7, 11 ("Plaintiff tripped on an empty green shopping basket."), 12, 14, 15 ("Plaintiff did not trip over a crate but instead tripped over a basket."), 16 ("Plaintiff did not trip over any blue pallets."), 17, 19.

No one claims to have seen the out-of-place basket before the fall, not even Plaintiff, who was not looking down at the ground as she walked towards the carts. Plaintiff testified—and it is undisputed—that she does not know how the basket got on the floor, who put it there, or how long it was on the floor before her fall. See [36-1] at 36-37, 55; [40] at ¶ 17, 24, 25. When asked if she previously had seen any hazards or defects at the store, Plaintiff mentioned that (1) she had seen baskets on the floor of the store before; (2) she sometimes saw Kleenex, paper towels, and "toilet paper in cases in the aisle"; and (3) Defendant "had—in one of the aisles, they had a round table—a round—with a lot of toys in them." [36-1] at 27-28, 55-56; see also [38] at ¶ 40. Plaintiff also testified that she had not fallen in the store before the incident or seen anyone else fall. See [36-1] at 28.

Defendant maintains a Safety Program Manual for its stores. The manual contains a "Code of Safe Practices," instructing employees to keep the floors clean and dry; keep the aisles, stairways, and doorways clear; and ensure that carts, ladders, and display racks are not left unattended in aisles or other places "as they create a tripping hazard." Specific "vinyl floor safety" provisions direct employees to clean spills immediately and remove all foreign objects and fallen merchandise from the floor. The manual also provides for the formation of store-specific safety committees, monthly safety meetings, and quarterly safety inspections of the store using a provided template checklist. See (M. Bly Dep. Group Ex. 8).[5] At her deposition, Bly testified that she was unfamiliar with the Safety Program Manual, she did not recall a formal accident prevention program at the store, the store did not have a safety committee, and she had not seen any specific "store inspection checklists." See [36-2] at 40, 43; see also [41] at ¶¶ 6-9.

---

[5] Plaintiff delivered a copy of this document to the Court; she did not file it under seal or file a placeholder exhibit on the docket. In order to ensure a complete record, the Court directs Plaintiff to file this document on the docket under seal pursuant to the parties' protective order. See [18] at ¶ 6(d).

Still, she testified that she attended mandatory monthly safety meetings at the store led by the manager, during which topics and procedures dictated by "corporate" were discussed, including "foreign objects that may constitute a tripping hazard." See [36-2] at 26-30. She also testified that she inspected the store at the beginning of each shift using a written checklist, *id*. at 41, and, despite being unfamiliar with the safety manual itself, she described the document as "basically our procedures" which she followed in April 2015. *Id*. at 43, 59.

Bly testified that approximately every 15 minutes, a Dollar Store employee would corral stray carts and place them where they belong at the front of the store, and at the same time, survey the area and remove anything that did not belong there, and it is undisputed that employees were supposed to remedy any tripping hazards observed, including baskets on the floor. *Id*. at 37; see also [40] at ¶ 38; [41] at ¶¶ 13-15. Bly testified that front of the store was inspected frequently on April 10, 2015 in this manner. See [36-2] at 53; see also [40] at ¶ 37. Regarding staffing, Bly testified that on the date of the accident one other employee was working at the time of Plaintiff's fall, an associate named Jackie Bejar. Plaintiff believes that a third unidentified employee was present as well.

Generally, Bly confirmed that she had seen customers leave shopping baskets on the floor near the cash registers. [41] at ¶ 20. She testified that when this happens, an employee is supposed to pick up the baskets and take them to where they are stored. [36-2] at 40. Finally, Bly testified that she was not aware of prior complaints or accidents involving shopping baskets in the area where Plaintiff fell, *id*. at 58, and that she was only aware of one other trip-and-fall accident inside the Dollar Tree store during her seven years there, which she described as a woman who "fell over her shoes." *Id*. at 70.

Plaintiff sued Defendant in the Circuit Court of Cook County, Illinois in August 2015, and Defendant removed that lawsuit to federal court, invoking the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. See [1]. Plaintiff has filed an amended two-count complaint [28], which appears to separately allege negligence and a violation of a City of Chicago ordinance governing building passageways and exits, Chi. Mun. Code § 13-196-080.[6] Defendant now moves for summary judgment. [35]. In support, Defendant has submitted transcripts from Plaintiff's and Bly's deposition, without the corresponding exhibits; Plaintiff has submitted the single exhibit to her own deposition—a photograph taken at the Dollar Tree store by Bly sometime after April 10—and one exhibit to Bly's deposition—the Safety Program Manual.

## II.    Summary Judgment Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although a bare contention that a factual dispute exists is insufficient to defeat a

---

[6] The Court briefly addresses jurisdiction. There is no question that the parties are diverse—Plaintiff is an Illinois citizen and Defendant is a Virginia corporation with its principal place of business also in Virginia. As far as the jurisdictional amount, Plaintiff's original complaint sought damages "in excess of" $30,000 plus costs for "necessary medical care," "extreme pain and suffering," and "lost enjoyment of her life." See [1-1] at 2-3. In the notice of removal, Defendant stated that the amount in controversy exceeds $75,000 because Plaintiff "has already incurred great expense for necessary medical care in excess of $41,000." See [1]. Plaintiff did not contest Defendant's jurisdictional allegations, although in interrogatory responses dated November 13, 2015, she claimed damages of exactly $58,030.92, see [40] at ¶ 3, and through her deposition, she confirmed that her medical treatment had concluded around that same time. See [36-1] at 64-65. On January 19, 2016, however, Plaintiff submitted an amended complaint praying for damages in excess of $75,000. See [28]. The Seventh Circuit has stated that "[o]nly if it is 'legally certain' that the recovery * * * will be less than the jurisdictional floor may the case be dismissed." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006). Acknowledging that Plaintiff has requested damages above and beyond her medical expenses for pain and suffering and loss of life enjoyment, the Court cannot be sure that Plaintiff is bound to recover less than $75,000, and it will proceed to the merits.

motion for summary judgment, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000) (citing *Liberty Lobby*, 477 U.S. at 247), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor (here, Plaintiff). *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation omitted).

Defendant is entitled to summary judgment if Plaintiff "cannot present sufficient evidence to create a dispute of material fact regarding any essential element of her legal claims on which she bears the burden of proof." *Burton v. Bd. of Regents of the Univ. of Wis. Sys.*, 851 F.3d 690, 694 (7th Cir. 2017). To avoid summary judgment, the nonmoving party must go beyond the allegations of her complaint and "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250 (internal quotation marks and citation omitted); accord *Hannemann v. Southern Door County Sch. Dist.*, 673 F.3d 746, 751 (7th Cir. 2012). For this reason, the Seventh Circuit has called summary judgment the "put up or shut up" moment in a lawsuit—"when a party must show what evidence it has that would convince a trier of fact to accept its version of events." See *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007). In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### III. Analysis

Plaintiff alleges that Defendant acted negligently by failing to keep its store safe, causing her injuries. The parties agree that Illinois law supplies the elements that Plaintiff must prove to prevail in this diversity suit. See *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 649 (7th Cir. 2014); *Lane v. Hardee's Food Systems, Inc.*, 184 F.3d 705, 707 (7th Cir. 1999).

7

To recover on a negligence claim under Illinois law, a plaintiff must establish the existence of a duty owed by the defendant, a breach of that duty, and an injury proximately resulting from that breach. *Piotrowski v. Menard, Inc*., 842 F.3d 1035, 1038 (7th Cir. 2016) (citing *Newsom–Bogan v. Wendy's Old Fashioned Hamburgers of N.Y., Inc*., 2011 IL App (1st) 092860, ¶ 14). Pursuant to the theory of premises liability, businesses owe their invitees a duty to maintain the premises in a reasonably safe condition to avoid injuring them. *Marshall v. Burger King Corp*., 222 Ill. 2d 422, 437 (2006); see also *Parker v. Four Seasons Hotels, Ltd*., 845 F.3d 807, 811 (7th Cir. 2017). Defendant argues that summary judgment should be granted in its favor because (1) it did not owe Plaintiff any duty because the condition that caused her fall was "open and obvious," (2) even if it did owe Plaintiff a duty, Plaintiff cannot prove that Defendant breached any duty, and (3) Plaintiff cannot recover against Defendant because her comparative fault is more than fifty percent. See [35] at 3. Because the Court finds Defendant's breach theory dispositive, it limits its analysis accordingly.

A business breaches its duty to an invitee who is injured by falling on account of a foreign substance if the invitee establishes that the business had actual notice of the substance, or the business had constructive notice of the substance. *Zuppardi*, 770 F.3d at 649. The notice requirement may be excused, but only in cases where the defendant actually created the dangerous condition. *Id*. Here, Plaintiff argues for two of the three pathways to liability[7]: (1) that one of Defendant's employees was responsible for the basket's placement, and

---

[7] Although Plaintiff's complaint asserts that Defendant had actual knowledge of the basket and failed to remedy it, see [28] at Count One, ¶ 4(c) & Count Two, ¶ 6(c), she appears to abandon any additional actual-notice theory in her summary judgment briefing. In any event, such a theory is not viable because Plaintiff did not present any evidence to demonstrate that Defendant or its employees either were aware that the basket on which Plaintiff fell posed a hazardous condition or that Defendant had received complaints about that stray basket from previous customers. See *Porges v. Wal-Mart Stores, Inc*., 2011 WL 939922, at *7 (N.D. Ill. Mar. 15, 2011) (finding no evidence of actual notice in a similar evidentiary landscape).

alternatively (2) Defendant's store had a pattern of "unsafe conduct" and "recurring incidents" so as to give Defendant constructive notice of the basket. Plaintiff also contends that Defendant's violation of Chicago Municipal Code § 13-196-080 is *prima facie* evidence of Defendant's negligence. The Court addresses each argument in turn.

### A. Defendant's Own Negligence

Defendant may be liable if it or its employees negligently created the hazardous condition. To prove that the defendant, rather than a third party, created the dangerous condition, Illinois courts require a plaintiff to (1) demonstrate that the foreign substance was related to the defendant's business, and (2) offer "some further evidence, direct or circumstantial, however slight, such as the location of the substance or the business practices of the defendant, from which it could be inferred that it was more likely that defendant or his servants, rather than a customer, dropped the substance on the premises." *Piotrowski*, 842 F.3d at 1038-39 (citing *Zuppardi*, 770 F.3d at 650). The parties do not dispute that the shopping basket was related to Defendant's business.

Plaintiff argues that "there is sufficient evidence to create a question of fact" as to whether the basket was "dropped on the floor by one of Defendant's employees." [37] at 2. She suggests that the basket could have placed or dropped by an employee because (i) it was in the front of the store near the checkout counter, (ii) no customers were in the area, and (iii) it was related to Defendant's operations. See [37] at 8. The Court concludes that although these factors provide a *possible* way in which a Dollar Tree employee could have been responsible for the basket, they do not allow the inference that the basket was more likely placed by a Dollar Tree employee than by a customer. This is particularly so where Plaintiff's own testimony demonstrates that she does not know how the basket got on the floor or whether an employee or

9

customer left it there, see [40] at ¶¶ 17, 24; and where Bly's testimony suggests that it is equally if not more likely that a customer left the basket on the floor. See [36-2] at 40; see also *Zuppardi*, 770 F.3d at 650 (it was insufficient for plaintiff to solely provide a possible way in which a Wal-Mart employee could have caused a spill). Plaintiff emphasizes the fact that no customers were seen near the basket, but this does not swing the pendulum towards Defendant's liability because the record equally reflects that no employees were near the basket. See *Steinhauer v. DeGolier*, 359 F.3d 481, 485 n.1 (7th Cir. 2004) (speculative and inconclusive testimony did not by itself create a genuine factual dispute).

This case is similar in many ways to *Piotrowski*. There, a woman was injured after she slipped on two small rocks in the parking lot of a Menard store. The plaintiff argued that Menard caused the dangerous condition, putting forth evidence that (1) Menard maintained a planter in the parking lot that contained plants and decorative small rocks that were replenished from time to time and (2) Menard sold bags of decorative rocks. *Piotrowski*, 842 F.3d at 1037. The Seventh Circuit found Plaintiff's evidence insufficient to create a triable issue as to whether it was more likely than not that a Menard employee was responsible for the rocks, especially where the plaintiff had acknowledged various ways that rocks could have been depleted from the planter that did not involve Menard employees. *Id*. at 1039. Since the plaintiff did not see the rocks fall or point to anyone else who knew how the rocks ended up on the ground, her argument that a Menard employee was responsible for them was speculative and not enough to avoid summary judgment. *Id*. The Court reaches the same conclusion here. Because Plaintiff neither knows how the basket ended up on the floor nor points to any evidence on this point, her argument that the basket was dropped on the floor by a Dollar Tree employee is only speculation.

In another attempt to show that Defendant is responsible for the stray basket, Plaintiff contends that the dispute over whether two or three of Defendant's employees were present in the store at the time of the incident is important to this analysis and further supports her conclusion that this issue should be presented to a jury. The Court does not agree. Plaintiff has not offered any evidence that this third employee was actually or even possibly responsible for the basket placement. The only argument Plaintiff offers is the following: "[s]hould this court determine that this third employee is a missing witness, then this court should presume that the testimony of this missing witness would be unfavorable to Defendant." [37] at 9. The Court will not speculate that the absence of testimony from an unidentified employee who allegedly was working that day creates the inference that this employee is responsible for the stray basket. Although the Court is required to draw all reasonable inferences in Plaintiff's favor, this is not reasonable, especially on the record before the Court, which indicates that neither Plaintiff nor Defendant knows how the basket ended up on the floor.[8] In sum, because Plaintiff has not offered any direct or circumstantial evidence to indicate that it was more likely that one of Defendant's employees, rather than a customer, was responsible for the basket, Plaintiff has failed to demonstrate a material issue of fact on this basis.

B. **Constructive Notice**

Plaintiff still can succeed on her negligence claim if she can show that Defendant had constructive notice of the dangerous condition that caused her fall. *Reid v. Kohl's Dep't Stores, Inc.*, 545 F.3d 479, 481 (7th Cir. 2008) (citing *Pavlik v. Wal-Mart Stores, Inc.*, 323 Ill. App. 3d 1060, 1063 (1st. Dist. 2001)). Constructive notice can be established under two alternative theories: (1) the dangerous condition existed for a sufficient amount of time so that it would have

---

[8] Not only is this unreasonable, but Plaintiff also has not offered any discussion whatsoever of her efforts to locate and/or depose this individual.

been discovered by the exercise of ordinary care, or (2) the dangerous condition was part of a pattern of conduct or a recurring incident. *Culli v. Marathon Petroleum Co.*, 862 F.2d 119, 120 (7th Cir. 1988) (citations omitted).

Plaintiff relies on a pattern-or-practice theory. See [37] at 4. A number of the leading state cases appear to define the relevant pattern narrowly. See, *e.g.*, *Swartz v. Sears, Roebuck and Co.*, 264 Ill. App. 3d 254, 273 (1st Dist. 1993) (special proof of notice is not required "where defendant knew of prior occasions where the same type of substance was present on the floor creating a potentially dangerous situation"); *Dunlap v. Marshall Field & Co.*, 27 Ill. App. 3d 628, 631 (1st Dist. 1975) (where plaintiff tripped on a discarded lollipop stick, repeated incident theory failed for lack of proof that eating lollipops and improperly discarding waste was a recurring problem in the store). The Seventh Circuit, however, has emphasized that the important pattern is negligence, not particular spills. See *Culli*, 862 F.2d at 126.

Taking a closer look at *Culli*, which is the only support Plaintiff provides for her pattern-or-practice argument, a customer sued a gas station for injuries sustained when she slipped and fell on a spill in the pump area. On appeal, the Seventh Circuit considered whether sufficient evidence existed to establish that the plaintiff's injury was caused by "a pattern of conduct or recurring incident which would constitute constructive notice of a dangerous condition." *Id*. at 125-26. In finding that it did, the court of appeals stated that the plaintiff did not need to show a pattern or practice of a particular type of spill; rather, the plaintiff only needed to show a pattern of dangerous conditions that were not remedied within a reasonable amount of time. *Id*. at 126. On the facts before it, the Seventh Circuit held that substantial evidence of the defendant's liability had been presented. In particular, the court highlighted evidence establishing that spills occurred on a daily basis in the pump area and that such spills were cleaned, if at all, only during

the night shift. In addition, the defendant had admitted that the record contained "much evidence" concerning its "failure to frequently inspect the premises for defects." Combined with the unusually high customer traffic on the day in question (the gas station was conducting a soda promotion that day), the court held that the evidence supported the conclusion that the gas station's maintenance of its property was unreasonable and caused the plaintiff's injury. *Id*. at 126-27.

To show a pattern or practice in this case, Plaintiff points to (1) her own testimony and Bly's testimony that baskets were seen "on the floor on other occasions"; (2) testimony that "cases" of paper goods were sometimes in the aisles; (3) testimony that a table with toys on it was once in an aisle; and (4) evidence that Defendant's employees failed to follow its Safety Program Manual. [37] at 5. Plaintiff focuses most of her attention on the Safety Program Manual, arguing that the lack of compliance with its provisions—namely forming a safety committee and performing quarterly safety inspections—during Bly's multi-year tenure at the store means that employees ignored safety rules and "establish[es] a pattern of unsafe conduct." *Id*. at 6. Plaintiff's evidence differs from that in *Culli* for many reasons, and the Court concludes that Plaintiff has not presented sufficient evidence to create a triable issue as to Defendant's alleged pattern of negligently responding to hazards on the sales floor.

Addressing the baskets first, the Court agrees that Plaintiff has presented sufficient evidence that baskets were frequently left on the floor of the Dollar Tree store. Plaintiff testified that she had seen or noticed baskets on the floor "on other occasions," and Bly testified generally that she had seen customers leave baskets on the floor near the cash registers. Although this somewhat vague testimony leaves certain questions about the frequency with which baskets were

13

left on the floor unanswered, construing all facts and drawing all inferences in favor of Plaintiff, she has established a pattern.

The fact that baskets may be commonly found on the floor of the Dollar Tree store, however, is not entirely surprising and nor is it adequate, without more, to demonstrate constructive notice under *Culli*. Plaintiff also needs to present evidence that the conditions were not remedied within a reasonable period of time. See *Culli*, 862 F.2d at 126 ("[w]hat is needed is a pattern of dangerous conditions which were not attended to within a reasonable period of time"). In other words, Plaintiff needs to demonstrate that Defendant inadequately responded to the misplaced baskets. Plaintiff has failed to do so. For example, Plaintiff does not offer any evidence of other trip-and-fall incidents in Defendant's store involving baskets or otherwise resulting from Defendant's negligence. Indeed, the record only reflects that one other person had fallen in the store and the details of that fall, although not fully developed, do not implicate Defendant's fault. See *Torres v. T.G.I Friday's*, 2006 WL 3743132, at *4 (N.D. Ill. Dec. 15, 2006) (plaintiff could not establish constructive notice by pattern or practice where the record was devoid of evidence regarding similar injuries caused by problems with lighting in fryer hoods at T.G.I. Friday's); cf. *Shimkus v. Target Corp.*, 2012 WL 619500, at *4 (N.D. Ill. Feb. 24, 2012) (granting summary judgment even where plaintiff introduced 25 incident reports of slips and falls in support of pattern-or-practice theory because the plaintiff failed to marshal sufficient evidence to show a pattern of insufficient response to dangerous conditions).

Further, unlike *Culli*, the record reflects that Defendant had at least two employees in the store at the time of the accident, and Bly testified that the front of the store was frequently inspected to attend to misplaced items, stray carts, and baskets. The record is devoid of any indication that this was insufficient: although Bly testified that Fridays at noon are generally

busy times for the store, nothing in the record indicates that the store was atypically busy in the same way the gas station in *Culli* was during the soda promotion so as to require more frequent inspections. Plaintiff's situation again mirrors that in *Piotrowski*, where the Seventh Circuit concluded that the plaintiff had failed to establish a pattern of dangerous conditions so as to give Menard constructive notice of the rocks in the parking lot where (1) the plaintiff failed to provide evidence of (a) other incidents in parking lot or (b) complaints of loose rocks on the ground there and (2) a Menard employee testified that there were frequent safety inspections of the lot. See *Piotrowski*, 842 F.3d at 1040. Like the plaintiff in *Piotrowski*, Plaintiff's arguments that baskets were frequently left on the ground at the Defendant's store fails to establish constructive notice.

The Court applies this same analysis with even greater force to the cases of paper goods and table of toys Plaintiff observed in the aisles of the store. To start, Plaintiff has not offered any evidence or argument as to why these conditions should be considered "dangerous" or tripping hazards that need to be remedied. She has not described the size or shape of the cases nor has she offered testimony that she observed any merchandise from the table that had fallen to the ground. Even if the cases and table somehow posed a danger to customers, Plaintiff has again failed to adduce any evidence or argument that they were unattended to, generated complaints, or caused recurring injuries. See *id*. Without more than the basic fact that cases of merchandise were occasionally in the aisles and that she had once observed a merchandise display in an aisle, the Court cannot find a triable question of fact regarding a pattern of dangerous conditions of which Defendant should have been aware.

Finally, Plaintiff makes much of the fact that Defendant failed to follow its Safety Program Manual. She describes Bly's testimony regarding the store's failure to comply with certain of the manual's specific directives, particularly administrative and recordkeeping

directives, and concludes that this establishes a pattern of unsafe conduct so as to have given Defendant constructive notice of the basket. See [37] at 6. The Court is not persuaded that this alone constitutes constructive notice under *Culli*. Plaintiff omits other relevant portions of Bly's testimony that demonstrate that safety procedures were in place and observed. For example, despite her ignorance of the manual and formal accident prevention program, Bly testified that monthly safety meetings were held and pre-shift inspections were conducted. Further, Bly testified that on the day of Plaintiff's fall, the front of the store was surveyed frequently.

Even accepting Plaintiff's facts, they only satisfy at most half of the pattern-or-practice calculation. Plaintiff still has failed to provide evidence or argument as to how the failure to follow the written procedures created unaddressed *dangerous* conditions, for instance by providing evidence of other tripping hazards, complaints, or injuries. Based on the record before it, the Court cannot find that the evidence of Defendant's noncompliance with its formal accident-prevention and other policies by itself is sufficient to demonstrate constructive notice, especially where the uncontroverted testimony is that the procedures employed basically mirrored the formal procedures set out in the manual. Cf. *Zuppardi*, 770 F.3d at 652 (evidence that Wal-Mart did not follow a certain monitoring policy did not demonstrate that it had constructive notice of a spill, where Wal-Mart policy went above and beyond the duties required of businesses by Illinois law).

The Court therefore concludes that Plaintiff cannot survive summary judgment on her theory that Defendant had constructive notice of the hazard—here, the basket on the floor near the front of the store—because she has not offered evidence sufficient to demonstrate or even draw the inference that trips and falls of any kind were a regular occurrence against which Defendant failed to take special precaution. *Piotrowski*, 842 F.3d at 1040; accord *Krebs v.*

*Valley Baptist Church, Inc.*, 2014 IL App (2d) 140243-U, ¶ 26 (affirming a grant of summary judgment and finding no constructive notice where there was no evidence of prior accidents in the area of plaintiff's fall, no evidence to show that dangerous condition was created on a daily basis, and no evidence that defendant's maintenance of its property was unreasonable).[9]

### C. Chicago Municipal Code § 13-196-080

Finally, Plaintiff points to Chicago Municipal Code § 13-196-080 (the "Ordinance"), which states: "**Passageways and exits to be unobstructed**. Every hallway, corridor, stairway, exit, fire escape door, and other means of egress, shall be kept clear and unencumbered at all times; * * * ." She argues that Defendant's violation of the Ordinance constitutes *prima facie* evidence of Defendant's negligence because, according to Plaintiff, the Ordinance is designed to protect human life and property. See [37] at 10. Defendant argues primarily that even with an alleged violation of the Ordinance, Plaintiff must still prove causation, which Defendant argues she cannot. Defendant also obliquely argues that Plaintiff has not cited any evidence in support of her claim that Defendant's alleged statutory violation is determinative here, mostly because she has not offered any support for her argument that the Ordinance is the kind that supports a finding of negligence upon its violation. See [42] at 9-10.

The Court pauses to note that, as framed by the headings in the complaint, Plaintiff asserts an independent count based on Defendant's alleged violation of the ordinance. Viewing

---

[9] Defendant's motion also addressed the sufficient-amount-of-time constructive notice theory, under which evidence establishing how long a particular tripping hazard was present on the floor is necessary. See *Culli*, 862 F.2d at 123, 125 (collecting Illinois constructive-notice cases requiring the plaintiff to establish the amount of time that the dangerous condition existed). The Court agrees that Plaintiff cannot succeed on this theory on the record before it, where it is undisputed that Plaintiff did not know how long the basket was on the floor and there is no other evidence regarding the length of the time basket was on the floor. See *Ballerini v. Wal-Mart Stores, Inc.*, 2012 IL App (3d) 110423-U, ¶ 19 (where plaintiff who tripped and fell over an open bag of mulch failed to offer any evidence from either Wal-Mart employees or herself about how the bag got on the floor or how long it had been sitting there, the court found that there was "simply no evidence from which constructive notice can be established or inferred, even when the evidence is viewed in the light most favorable to the plaintiff.").

17

the complaint and Plaintiff's response briefing as a whole, however, Plaintiff appears to use Defendant's alleged violation of the Ordinance in support of her negligence claim. See, *e.g.*, [28] at Count Two, ¶ 6(f) (Defendant "breached its duty to exercise reasonable care" when it "[v]iolated Section 13-196-080 of the Chicago Municipal Code"); [37] at 10. The only case cited by Plaintiff involving an ordinance, *Kalata v. Anheuser-Busch Companies, Inc.*, 144 Ill. 2d 425 (1991), supports this conclusion. The Court accordingly construes Plaintiff's entire amended complaint as asserting one claim of negligence against Defendant.[10]

Looking next to the alleged Ordinance violation,[11] the Court agrees with Defendant that Plaintiff has failed to support her assertion that the Ordinance is one designed to protect human life, like the ordinance implicated in *Kalata*. There, a plaintiff alleged that Anheuser-Busch was negligent in failing to provide a handrail on both sides of a stairway in violation of a city ordinance. *Id.* at 427. Anheuser-Busch did not dispute that the plaintiff and the kind of injury suffered fell within the purview of the ordinance. The Illinois Supreme Court made a clear finding that the ordinance was a public safety measure and that the plaintiff in that case was within the class of persons which the ordinance was designed to protect. *Id.* at 435. Here, although Plaintiff's complaint alleges that the Ordinance is designed to protect human life and property and to cover a class of persons in which she is included, see [28] at Count Two ¶ 2, Plaintiff has not offered any argument or other evidence concerning the purpose or interpretation

---

[10] In any event, the Court is aware of no case (and the parties do not cite any) that has extended an implied right of action to a plaintiff seeking redress for injuries arising under that section of the Chicago Municipal Code.

[11] The Court notes that Defendant's opening brief did not address Plaintiff's allegations regarding its violation of the Ordinance. Plaintiff's response highlighted this omission and also argued the merits of these allegations. See [37] at 9-10. Through its reply, Defendant asserts that such allegations are analyzed under the "traditional negligence principles" set forth in its opening brief and therefore its failure to specifically address the Ordinance in its initial brief should not preclude summary judgment. See [42] at 9. Notwithstanding Defendant's failure to address the Ordinance allegations until its reply, the issue has been adequately briefed, and a finding of waiver would not be appropriate.

of the Ordinance. *Liberty Lobby*, 477 U.S. at 248 (nonmoving party must go beyond the allegations of her complaint).

Even assuming that the Ordinance is designed to protect human life, the Court cannot go so far as to infer that Defendant violated the Ordinance based on the summary judgment record before it. Plaintiff provides no meaningful support for her argument that Defendant violated the Ordinance: she excerpts the text of the Ordinance; she provides dictionary definitions of "passage," "corridor," and "egress"; and she states that violation of an ordinance is *prima facie* evidence of negligence. See [37] at 10. But Plaintiff neither has alleged nor testified that she fell in one of the store's two doorways. In fact, Plaintiff testified that, before her fall, the entrance doors had fully closed behind her, and it is undisputed that Plaintiff was "eight to ten steps" into the store and to the left of the store entrance when she fell. See, *e.g.*, [40] at ¶ 8. Accordingly, Plaintiff has not presented sufficient evidence to support her Ordinance-violation argument.

Illinois law does not impose an absolute duty upon property owners to ensure the safety of its residents. See *Culli*, 862 F.2d at 123. Rather, the law imposes a duty of reasonable care upon property owners to remedy dangerous situations of which they negligently created or knew or should have known. The Court acknowledges that Plaintiff suffered an unfortunate injury. Nevertheless, based on the summary judgment record, a reasonable jury could not find that Defendant was negligent with respect to conditions at the front of its store. See *Zuppardi*, 770 F.3d at 650-52 (affirming grant of summary judgment where the plaintiff failed to produce any evidence that Wal-Mart knew about or caused a spill on which the plaintiff slipped). To hold otherwise would be inconsistent with the long established rule that to demonstrate a genuine issue of fact, the nonmoving party "must do more than raise some metaphysical doubt as to the material facts"; "the nonmoving party must come forward with specific facts showing that there

is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586 (emphasis in original).[12]

IV. **Conclusion**

For the reasons stated above, the Court grants Defendant's motion for summary judgment [35], and it strikes (1) Plaintiff's motion calling attention of the court for a decision [43] as moot and (2) the notice of motion date of July 13, 2017. No appearances are necessary on that date. Final judgment will be entered in favor of Defendant and against Plaintiff on Plaintiff's amended complaint.

Dated: July 11, 2017

_____
Robert M. Dow, Jr.
United States District Judge

---

[12] According to Plaintiff, the parties' disputes over (1) where the shopping baskets were kept on the date of the accident, (2) whether the shopping carts were lined up against the parallel window versus the perpendicular window, and (3) whether two or three employees were working at the time of her fall are factual disputes that preclude summary judgment. Again, a bare contention that a factual dispute exists is insufficient to defeat summary judgment, *Bellaver*, 200 F.3d at 492, particularly where, as here, the disputed facts are not material. The Seventh Circuit has recognized a "material" fact to be one that is a "potentially outcome determinative" fact. See, *e.g.*, *Jenkins v. Heintz*, 124 F.3d 824, 828 (7th Cir. 1997). Factual disputes that are irrelevant or unnecessary will not be counted. *Liberty Lobby*, 477 U.S. at 248. Plaintiff does not provide any meaningful argument as to why these are *material* facts in this case, and the Court cannot find that they are. Taking Plaintiff's version of all three disputes as true, a rational trier of fact still could not find in her favor on the record as presented here.